IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13–cv–02167–RM–KMT

BRUCE W. JONES,

      Plaintiff,

v.

DR. JEFFREY ALLEN, individually and in his official capacity, Chief Health Programs, Health Services Division, Washington D.C., North Central Region, Kansas City, Kansas,
LISA GREGORY, individually and in her official capacity, Regional Health Services Administrator, North Central Regional Office, Kansas City, Kansas,
ALLYSON ALVARADO, individually and in her official capacity, Health Services Administrator, Federal Correctional Institute, Florence,
LT. CIMAROSSA, individually and in her official capacity, Acting Asst. Health Services Health Administrator, Federal Correctional Institute, Florence,
GEORGE SANTINI, individually and his official capacity, Staff Physician, Federal Correctional Institute, Florence,
ALICIA VINYARD, individually and in her official capacity, Midlevel Provider, Federal Correctional Institute, Florence,
GILBERTA TRUJILLO, individually and in her official Capacity, Medical Secretary, Federal Correctional Institute, Florence,
P. RANGEL, individually and in his official capacity, Associate Warden, Federal Correctional Institute, Florence, and
JAMES PELTON, individually and in his official capacity, Acting Clinical Director, Federal Correctional Institute, Florence,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendants' Motion to Dismiss" filed by

Defendants Alvarado, Cimarossa, Santini, Vineyard, Trujillo, and Pelton ("FCI Defendants")

(Doc. No. 31 [FCI's Mot. Dismiss], filed February 18, 2014), to which Plaintiff filed his response on February 28, 2014 (Doc. No. 35 [Resp. FCI's Mot.]).

Also before the court is "Defendants' Motion for Summary Judgment Regarding Unexhausted Claims" filed by the FCI Defendants. (Doc. No. 32 [Mot. Summ. J.], filed February 18, 2014.) Plaintiff did not file a response.

Also before the court is "Defendants Allen and Gregory's Motion to Dismiss for Lack of Personal Jurisdiction." (Doc. No. 42 [Allen's Mot.], filed April 21, 2014.) Plaintiff did not file a response.

These motions are ripe for recommendation and order.

## PROCEDURAL HISTORY

Plaintiff filed his Complaint on August 13, 2013, asserting jurisdiction under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Doc. No. 1 [Compl.].) On August 19, 2013, Magistrate Judge Boyd N. Boland granted Plaintiff leave to proceed pursuant to 28 U.S.C. § 1915. (Doc. No. 4.) Magistrate Judge Boland also entered an order directing Plaintiff to show cause why the claims asserted against Defendants Kellar, Santini, Vinyard, Trujillo, and Pelton should not be dismissed as repetitive of the claims that he asserted and were, at that time, pending in *Jones v. Kellar*, No. 11-cv-02721-RM-KMT (D. Colo. filed Oct. 19, 2011). Plaintiff filed a response on August 27, 2013, in which he represented that his claims in this case involve only constitutional violations that took place from February 2012 forward, whereas the claims in Case No. 11-cv–02721-RM-KMT took place prior to surgery that was performed in mid-February 2012. (*See* Doc. No. 7.) Magistrate Judge Boland, therefore,

2

did not dismiss Plaintiff's claims asserted from February 2012 forward as repetitive of the claims asserted in Case No. 11-cv-02721-RM-KMT, and the only claims remaining in this case are claims regarding incidents occurring on or after mid-February 2012.  (*See* Doc. No. 10.)

## STATEMENT OF THE CASE

At the time Plaintiff filed his Complaint he was an inmate at the Federal Correctional Institute ("FCI") of the Bureau of Prisons ("BOP") in Florence, Colorado.  (Doc. No. 1 [Compl.], filed August 13, 2013.)  Plaintiff asserts three claims against the defendants for their alleged violations of his Eighth Amendment rights.  (*See id.*)

In Claim One, asserted against Defendants Allen and Gregory, Plaintiff alleges he had a tumor of his C-5, C-6 nerve root for which he received surgery in February 2012.  (*Id.* at 7-8.) Plaintiff alleges in September 2012 he "began reporting a massive increase in symptoms and pain and weakness, shooting pain, tingling[,] loss of use of right arm[, and] loss of sweating." (*Id.* at 9.)  Plaintiff alleges from September 23, 2013, to February 15, 2013, he went to sick call over twenty-three times, but he "was denied CT scans, x-rays, adequate pain management and follow up with the Neurosurgeon Dr. Murad . . . ."  (*Id.*)  Plaintiff alleges on February 15, he became paralyzed and was taken to a hospital in Pueblo, Colorado, and then transferred to University Hospital in Denver, where another surgery on the spinal tumor was performed on February 18, 2013.  (*Id.*)  Plaintiff alleges that Defendants Allen and Gregory, by denying him access to a medical facility, allowed the tumor "to grow unabated in a region where there is limited medical resources . . . ."  (*Id.*)  Plaintiff alleges he now "faces a lifetime in a wheelchair and unabated pain and loss of use of his right arm."  (*Id.*)

In Claim Two, asserted against the FCI Defendants, Plaintiff alleges from September 2012 through February 2013, Defendant Santini, Vineyard, and members of the Utilization Review Committee ("URC") denied him medical care for his tumor.  (*Id.* at 18.)  Plaintiff alleges he was "[f]orced to live in intolerable pain."  (*Id.* at 18.)  In Claim Three, asserted against the FCI Defendants, Plaintiff alleges following his February 2013 surgery, he was denied physical therapy despite three recommendations that he get this "restorative help."  (*Id.* at 20.)  Plaintiff also alleges he was denied a neurostimulator for pain management despite his neurosurgeons' recommendations.  (*Id.*)

Plaintiff sues all defendants in their official and individual capacities and requests compensatory damages and injunctive relief.  (*See id.* at 1-2, 38.)

The FCI Defendants move to dismiss Plaintiff's claims against them on the bases that (1) to the extent Plaintiff seeks to hold the individual defendants liable in their official capacities, his claims are barred by sovereign immunity; (2) Defendants Alvarado and Cimarosa are absolutely immune from suit; (3) Plaintiff has failed to allege facts to state a claim upon which relief can be granted; and (4) the defendants, in their individual capacities, are entitled to qualified immunity. (*See* FCI's Mot. Dismiss.)  The FCI Defendants also move for summary judgment on some of Plaintiff's claims for Plaintiff's failure to exhaust his administrative remedies prior to filing suit. (*See* FCI's Mot. Summ. J.)  Defendants Allen and Gregory move to dismiss Plaintiff's claims against them for lack of personal jurisdiction.  (*See* Allen's Mot.)

## STANDARDS OF REVIEW

### 1.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).  *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").  The plaintiff's *pro se* status does not entitle him to application of different rules.  *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### 2.    *Lack of Subject Matter Jurisdiction*

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the

court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

### 3.      *Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a complaint for "lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of establishing personal jurisdiction over Defendants. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998). In the preliminary stages of litigation, Plaintiff's burden is light. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is decided on the basis of affidavits and other materials, Plaintiff need only make a *prima facie* showing that jurisdiction exists. *Id.*

Plaintiff "has the duty to support jurisdictional allegations in a complaint by competent proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate pleading." *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989). The allegations in Plaintiff's complaint "'must be taken as true to the extent they are uncontroverted by [Defendants'] affidavits.'" *Wenz*, 55 F.3d at 1505 (*quoting Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th Cir. 1992)). If the parties present conflicting affidavits, all factual disputes must be resolved in Plaintiff's favor, and "plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* (citation omitted). Only well-pleaded facts, as opposed to mere conclusory allegations, must be accepted as true. *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident defendant in a diversity action, the court looks to the law of the forum state. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). In Colorado, the assertion of personal jurisdiction must

both: (1) satisfy the requirements of the long-arm statute; and (2) comport with due process.  *Id.*; *Doering v. Copper Mountain*, Inc., 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235 (Colo. 1992).  Colorado's long-arm statute subjects a defendant to personal jurisdiction for engaging in — either in person or by an agent — the "commission of a tortious act within this state," or the "transaction of any business within this state."  Colo. Rev. Stat. §§ 13–1–124(1)(a)–(b) (2007).  To comport with due process, a defendant must have minimum contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process.  *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966).  Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment.  *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

### 4.     *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 1949–51. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 1951. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1940. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 1949 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*,129 S. Ct. at 1949 (citation omitted).

**5.      *Summary Judgment***

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325).  The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).  A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence.  *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010).  The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment.  *Concrete Works*, 36 F.3d at 1517.  At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record.  *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

### 1.     *Claims for Injunctive Relief*

At the outset, the court notes that Plaintiff alleges in his Complaint that "he is due to be released [from federal custody] in September 2013."  (Compl. at 11.)  On September 17, 2013, Plaintiff filed a "Notification of Change of Address," in which he advised he was released on September 12, 2013, to the custody of the Arapahoe County Detention Facility.  (Doc. No. 17.)  On January 17, 2014, Plaintiff filed another notification of a change of his address, in which he advised he has been released from custody and is on federal probation.  (Doc. No. 27.)

"A case becomes moot when events occur which resolve the controversy underlying it."  *United States v. Dominguez-Carmona*, 166 F.3d 1052, 1055 (10th Cir. 1999) (citing *Burke v. Barnes*, 479 U.S. 361, 363 (1987)).  "In such a situation, a federal court decision provides no resolution between the parties to the lawsuit and therefore, constitutes a constitutionally

11

impermissible advisory opinion." *Dominguez-Carmona*, 166 F.3d at 1055.  In other words, "when a favorable decision will not afford plaintiff relief, and plaintiff's case is not capable of repetition yet evading review, [the court has] no jurisdiction under Article III."  *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999).  Plaintiff's release from the BOP renders his claims for injunctive relief moot.  *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (prisoner's transfer mooted his claim for injunctive relief as a judgment in the prisoner's favor "would amount to nothing more than a declaration that he was wronged, and would have no effect on the defendants' behavior towards him").  In *McAlpine*, the Tenth Circuit held that

> when an inmate's claim for prospective injunctive relief regarding conditions of
> confinement becomes moot due to the inmate-plaintiff's release from
> confinement, the inmate's parole or supervised release status does not, absent
> some exceptional showing, bring that claim under the narrow "capable of
> repetition, yet evading review" exception to the mootness doctrine.

*McAlpine*, 187 F.3d at 1215.  "[T]he narrow capable-of-repetition exception to the mootness doctrine applies only 'where the following two circumstances [are] simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again.' "  187 F.3d at 1216 (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).

However, the *McAlpine* court held that "the hypothetical possibility that [the plaintiff], a former inmate on supervised release, will violate the terms of that supervised release and be returned to the same prison and same conditions of confinement cannot save an otherwise moot claim for prospective injunctive relief relating to prison conditions."  *Id.* at 1217.  Finally,

*McAlpine* declined "to speculate that [the plaintiff] will break the law or otherwise violate the conditions of [the] release agreement." *Id.* at 1218 (citing *Knox v. McGinnis*, 998 F.2d 1405, 1412–15 (7th Cir.1993)). "Such speculation would undermine the presumption of innocence in our criminal justice system, and the rehabilitative focus of the parole system." *Id.*

Thus, Plaintiff's claims for injunctive relief are moot and should be dismissed for lack of subject matter jurisdiction.

**2.**     ***FCI Defendants' Motion for Summary Judgment***

The FCI Defendants move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies under the Prison Litigation Reform Act of 1996 ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The "PLRA's exhaustion requirement applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). *See also Booth v. Churner*, 532 U.S. 731, 731–32 (2001) (PLRA requires exhaustion in all matters regardless of remedy sought and availability of remedy at the agency level).

The PLRA's requirement that an inmate exhaust all available administrative remedies before initiating suit is mandatory. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory."). *See also Jones v. Bock*, 549 U.S. at 210–212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). "To exhaust administrative remedies an

13

inmate must properly comply with grievance procedures; substantial compliance is insufficient."

*Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). "[T]o properly exhaust

administrative remedies prisoners must complete the administrative review process in

accordance with the applicable procedural rules,—rules that are defined not by the PLRA, but by

the prison grievance process itself." *Bock*, 549 U.S. at 218 (internal quotation marks and citation

omitted). Thus, it is the prison's own grievance procedures that set forth what the prisoner must

do in order to exhaust his or her administrative remedies. *Id.*, 549 U.S. at 218 (citation omitted).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper

exhaustion." *Id.*

After *Jones v. Bock*, a failure to exhaust administrative remedies constitutes an

affirmative defense which must proved by defendants. *Roberts v. Barreras*, 484 F.3d 1236, 1241

(10th Cir. 2007). The FCI Defendants submit evidence that Plaintiff failed to exhaust the

requisite administrative remedies as to some of his claims. The Federal Bureau of Prisons

("BOP") has a four-step administrative process that provides for review at the institutional,

regional and national levels "through which inmates may seek formal review of an issue which

relates to any aspect of their confinement [with exceptions not pertinent to this case], if less

formal procedures have not resolved the matter." 28 C.F.R. § 542.10–542.18. The court may

take judicial notice of the BOP's administrative process. *See Ray v. Aztec Well Service Co.*, 748

F.2d 888, 889 (10th Cir. 1984) (court can take judicial notice of agency rules and regulations).

The BOP's administrative procedures provide that "an inmate shall first present an issue

of concern informally to staff, and staff shall attempt to informally resolve the issue before an

inmate submits a Request for Administrative Remedy." 28 C.F.R. § 542.13(a).  Following

informal attempts to resolve a complaint, an inmate must submit to the Warden "a formal written

Administrative Remedy Request, on the appropriate form (B–9), 20 calendar days following the

date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).  If unsatisfied with the

Warden's response, the inmate may file "an Appeal on the appropriate form (BP–10) to the

appropriate Regional Director within 20 calendar days of the date the Warden signed the

response."  28 C .F.R. § 542.15(a).  If unsatisfied with the Regional Director's response, the

prisoner "may submit an Appeal on the appropriate form (BP–11) to the General Counsel within

30 calendar days of the date the Regional Director signed the response."  *Id.*  The appeal to the

General Counsel at the Central Office constitutes the final administrative appeal.  *Id.*  An inmate

may not raise issues in an appeal that were not raised in the lower level filing.  28 C.F.R. §

542.15(b)(2).  At any stage of the process, "[i]f the inmate does not receive a response within the

time allotted for reply, including extension, the inmate may consider the absence of a response to

be a denial at that level."  28 C.F.R. § 542.18.

According to Kaitlin B. Turner, an Attorney Advisor at the Federal Correctional

Complex in Florence, Colorado, the BOP regularly maintains records of administrative

complaints filed by inmates under the Bureau Administrative Remedy Program in a database

called SENTRY.  (Mot. Summ. J., Ex. A [Turner Decl.], ¶¶ 1, 5.)  If the complaint is an initial

filing, it will be assigned a unique Remedy ID Number upon initial entry, which will follow the

complaint throughout the appeal process.  (*Id.*, ¶ 5.)  Each Remedy ID Number also contains an

extender that identifies the level of review.  (*Id.*)  The extension F–1 indicates the complaint was

filed at the institution level. (*Id.*)  The extension R–1 indicates the complaint or appeal was filed

at the regional level.  (*Id.*) The extension A–1 indicates the appeal was filed at the national level.

(*Id.*)

The FCI Defendants have attached the complete SENTRY administrative index from

February 1, 2013, through January 1, 2014.  (Mot. Summ. J, Ex. A, Attach. 1.)  Upon a review of

the index, Plaintiff exhausted his administrative remedies for the following applicable

administrative remedy requests:

1.      Remedy Number 671526-A1, filed March 5, 2012, in which
        Plaintiff requested the name of the person who denied him a
        medical transfer (*id.* at 4);

2..     Remedy Number 726589-A1, filed June 3, 2013, in which Plaintiff
        alleged he was being "denied proper medical treatment-pain
        management" (*id.* at 23); and

3.      Remedy Number 731296-A1, filed June 18, 2013, in which
        Plaintiff complains about "medications given to him after surgery"
        (*id.* at 26).

### a.      *Claims One and Two*

As to Claim One, the FCI Defendants argue that Plaintiff did not exhaust his

administrative remedies except as to the portion of the claim in which Plaintiff alleges

Defendants Allen and Gregory were deliberately indifferent to his serious medical needs when

they denied his transfer to a medical center.  (Mot. Summ. J. at 4.)  As to Claim Two, the FCI

Defendants argue Plaintiff did not exhaust his administrative remedies except to the extent he

alleges he was denied adequate pain management care.  (*Id.*)

In Claims One and Two, Plaintiff alleges the defendants violated his Eighth Amendment

rights with regard to alleged failures to treat him from February 2012 until his surgery on

February 18, 2013.  (*See* Compl. at 9-11; 18-19.)  Except for his request for the name of the person who denied him a medical transfer (Mot. Summ. J., Ex. A, Attach 1 at 4), Plaintiff failed to exhaust his administrative remedies for any of the administrative remedy requests he submitted during that time period.  (*See id.*, Attach. 1.)  Thus, Plaintiff has exhausted his administrative remedy for his Claim One asserted against Defendants Allen and Gregory regarding their failure to transfer him to a medical facility.  However, because the undisputed evidence shows Plaintiff did not exhaust his administrative remedies as to any other portion of Claims One or Two, the FCI Defendants are entitled to summary judgment on those claims.[1]

> **b.**      ***Claim Three***

In Claim Three, Plaintiff seeks redress for the time period after his surgery on February 18, 2013.  (Compl. at 20-21.)  Plaintiff alleges Defendants "denied and delayed medical care to the plaintiff in the form of Physical therapy[,] Occupational therapy, [and an] Implanted Neurostimulator."  (*Id.*)  The FCI Defendants argue Plaintiff failed to exhaust his administrative remedies as to any of the allegations.  (Mot. Summ. J. at 5.)   The undisputed evidence shows Plaintiff did not exhaust his administrative remedies as to Claim Three to the extent Plaintiff

---

[1]It appears the FCI Defendants have misconstrued the time period for which Plaintiff seeks redress in Claim Two.  (*See* Mot. Summ. J.)  Nevertheless, it is clear from Claim Two that Plaintiff seeks redress only for the time period of September 2012 through February 15, 2013.  (*See* Compl. at 18-19).  The SENTRY administrative index shows that Plaintiff did not exhaust his administrative remedies for any of his claims asserted against the FCI Defendants during that period.  (*See* Mot. Summ. J., Ex. A, Attach. 1.)  Therefore, the FCI Defendants are entitled to summary judgment on Claims One and Two in their entirety.

makes allegations that the FCI Defendants denied him physical therapy and occupational therapy. (*See id.*, Ex. A, Attach. 1.)

However, Plaintiff did exhaust Remedy Number 726589-A1, in which he alleged he was being "denied proper medical treatment-*pain management*." (*Id.* at 23 [emphasis added].)  In Claim Three, Plaintiff specifically states that a  pain management specialist and two neurosurgeons recommended "an implanted neurostimulator to try and help with the intolerable pain." (Compl. at 20.)  Thus, the court finds Plaintiff exhausted Claim Three to the extent he alleges the FCI Defendants denied him a neurostimulator for pain therapy.

The FCI Defendants are entitled to summary judgment on Claim Three to the extent Plaintiff makes allegations that the FCI Defendants denied him physical therapy and occupational therapy.  However, the FCI Defendants' motion for summary judgment properly is denied as to Claim Three for the FCI Defendants' denial of a neurostimulator for pain management.

### 3.       *Defendants Allen and Gregory's Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants Allen and Gregory move to dismiss Plaintiff's claims against them for lack of personal jurisdiction.

General jurisdiction arises from a defendant's continuous and systematic activity in the forum state.  *Wise v. Lindamood*, 89 F. Supp.2d 1187, 1189–90 (D. Colo.1999).  To establish general jurisdiction, the non-resident's activities must create a "substantial connection" with the forum state, from which the court can conclude that the defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum." *Id.*  Random, attenuated, or

fortuitous activities by the defendant will not suffice to establish general jurisdiction.  *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985).  The Complaint does not allege any facts that would demonstrate continuous and systematic activity in this forum by either Defendant Allen or Defendant Gregory.  *See TJS Brokerage & Co., Inc. v. Mahoney*, 940 F. Supp. 784, 787 (E.D. Pa. 1996) (once personal jurisdiction has been challenged, plaintiff's jurisdictional allegations must be supported with appropriate affidavits or documents).

As an alternative basis for personal jurisdiction, specific jurisdiction is predicated upon a defendant's minimum contacts with the forum that give rise to the cause of action.  *Kuenzle v. HTM SportUnd Freizeitgerate A G*, 102 F.3d 453, 455 (10th Cir. 1996).  The court must consider whether "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  *Burger King*, 471 U.S. at 472.  The Supreme Court has held that the foreseeability of causing injury in the forum state is not sufficient to establish the requisite minimum contacts.  Rather, the contacts must result from the defendant's own actions and must create a "substantial connection with the forum."  *Id.* at 475.  "Purposeful availment requires actions by the Defendant which 'create a substantial connection with the forum state.' "  *OMI Holdings, Inc.*, 149 F.3d 1086 at 1092 (quoting *Asahi Metal Indu. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987)).

In his Complaint, Plaintiff alleges Defendant Allen is the Chief of Health Programs for the Health Services Division of the BOP in Washington, D.C.  (Compl. at 1, 3.)  Plaintiff alleges Defendant Gregory is the Regional Health Services Administrator for the North Central Regional Office of the BOP in Kansas City, Kansas.  (*Id.*)  Plaintiff alleges Defendants Allen and Gregory

denied his request to be transferred to a medical facility for treatment of his spinal tumor.  (*See* Compl. at 9-11.[2])

Plaintiff has not sustained his *prima facie* burden of showing that jurisdiction exists.  The Tenth Circuit previously has found that personal jurisdiction in Colorado over national and regional officials of the BOP does not arise simply because those officials have exercised supervisory responsibility over the BOP's operations in Colorado, or because an inmate has directed written complaints to the officials.  *See Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state").  *See also Gambina v. Federal Bureau of Prisons*, No. 10–cv–02376–MSK–KLM, 2011 WL 4505085, at *3–4 (D. Colo. Sept. 29, 2011) (holding that the court did not have personal jurisdiction over BOP Regional Director by virtue of his involvement in decisions impacting prisoners housed in Colorado or his alleged failure to meaningfully review the circumstances of the plaintiff's confinement at ADX); *McMillan v. Wiley*, 813 F. Supp.2d 1238, 1246 (D. Colo. 2011) (holding that the defendant did not have the requisite "minimum contacts" with Colorado simply because he had direct knowledge and had approved the plaintiff's transfer from general population to the ADX control unit); *Nichols v.*

---

[2]To the extent Plaintiff alleges in Claim One that these defendants violated his Eighth Amendment rights prior to February 2012, the court will not consider those allegations, pursuant to Plaintiff's representation that this case involves only constitutional violations that took place from February 2012 forward (*see* Doc. No. 7) and Magistrate Judge Boland's Order (*see* Doc. No. 10).

*Federal Bureau of Prisons*, No. 09–cv–00558–CMA–CBS, 2010 WL 3219998, at *3–4 (D.

Colo. Aug. 12, 2010) (holding that it was not reasonable to suggest that the defendant might be

hauled into court in Colorado "simply because [he has] . . . national supervisory responsibilities

over facilities within the forum state;" "receipt of grievances and letters is insufficient to

establish personal jurisdiction" over national or regional BOP officials); *Durham v. Lappin*, No.

05–cv–01282–MSK–MEH, 2006 WL 2724091, at *5 (D. Colo. Sept. 21, 2006) (in dismissing

claim against BOP Director, National Inmate Appeals Administrator and BOP Regional

Director, held that their contacts with the forum state "were completely fortuitous resulting from

the fact that the Plaintiff . . . was located in Colorado").

It is unclear from the Complaint whether Plaintiff filed grievances against Defendants

Allen and Gregory.  However, allegations that a prison official authorized actions or denied

administrative grievances knowing they would have effects in the forum state is insufficient to

establish jurisdiction.  *See Johnson v. Rardin*, No. 91-1211, 1992 WL 9019, at * 1 (10th Cir. Jan.

17, 1992) (dismissing BOP Director for lack of minimum contacts where his only involvement

was reviewing inmate's appeals and occasionally advising prison staff members in forum state);

*Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2008 WL 4216265, at *5 (D. Colo.

2008) (holding that the court lacked personal jurisdiction over defendant when the plaintiff's

sole allegation was that "BOP Defendants were placed on notice of the allegedly

unconstitutional conditions at ADX by his various grievances, and that their failure to remedy

the situation constitutes acquiescence.").

Thus, there are no allegations in the Complaint that demonstrate Defendants Allen and Gregory, during the relevant period, had continuous and systematic business contacts with this forum such that the Court could assert general personal jurisdiction.  Similarly, the court can find specific personal jurisdiction only if these non-resident defendants "purposely" directed their activities at Plaintiff and Plaintiff's claims arise out of those activities.  *Cf. Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  Plaintiff concedes that "neither Dr. Allen or Lisa Gregory had ever seen the plaintiff in a professional manner or any manner." (Compl. at 8.)  Fundamental notions of due process require a more substantial and purposeful nexus to this forum than the allegations in Plaintiff's Complaint establish or even suggest.

In the absence of a *prima facie* showing of personal jurisdiction, Defendants Allen and Gregory's motions to dismiss for lack of personal jurisdiction should be granted, and Claim One against them should be dismissed without prejudice.

**4.      *FCI Defendants' Motion to Dismiss***

The only claim remaining to be addressed is Plaintiff's Eighth Amendment allegation in Claim Three asserted against the FCI Defendants for their alleged denial of a neurostimulator for pain management.  (*See* Compl. at 20.)

**a.      *Sovereign Immunity***

The FCI Defendants in their official capacities enjoy sovereign immunity from *Bivens* actions.  *See Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *FDIC v. Meyer*, 510 U.S. 471, 486 (1994) (holding the United States is immune from a *Bivens* claim

22

for money damages); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action

may not be brought against federal agencies or agents acting in their official capacities.").

Sovereign immunity removes a court's jurisdiction over a complaint.  *See Governor of Kansas v.

Kempthorne*, 516 F.3d 833, 846 (10th Cir. 2008) (noting "the strict jurisdictional nature of

sovereign immunity").  This court, therefore, lacks jurisdiction over Plaintiff's *Bivens* claims

against the individual defendants in their official capacities.

Accordingly, Plaintiff's *Bivens* claims for monetary damages should be dismissed for

lack of subject matter jurisdiction.

### b.      Absolute Immunity

Defendants Alvarado and Cimarosa move for dismissal of Plaintiff's claims against them

based on their absolute immunity as Public Health Service employees.  Title 42 U.S.C. § 233(a)

"makes the United States the exclusive Defendant for injuries that employees of the Public

Health Service cause while acting within the scope of their employment."  *Lurch v. United

States*, 719 F.2d 333, 340 n.10 (10th Cir. 1983).  *See also Cuoco v. Moritsugu*, 222 F.3d 99, 107

(2d Cir. 2000) ("Section 233(a) makes the Federal Tort Claims Act ["FTCA"] the exclusive

remedy for specified actions against members of the Public Health Service.").

Plaintiff alleges in his Complaint that Defendants Alvarado and Cimarosa are employees

of the United States Public Health Service.  (Compl. at 4, ¶¶ 5-6.)  Plaintiff does not address the

defendants' argument in his response to their motion to dismiss.  (*See* Resp. FCI's Mot.

Dismiss.)

Defendants Alvarado and Cimarosa properly are dismissed from this civil action because they are entitled to absolute immunity.

### c.      Eighth Amendment

The FCI Defendants move to dismiss Plaintiff's Eighth Amendment claim for failure to state a claim upon which relief can be granted.

Prison officials violate the Eighth Amendment if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). "[A] prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (quoting *Estelle*, 429 U.S. at 106). The test for deliberate indifference involves both an objective and a subjective component. *Sealock v. Colo.*, 218 F.3d 1205, 1209 (2000).

The objective prong of the deliberate indifference test requires that the alleged deprivation of the inmate's constitutional right be "sufficiently serious"—one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

The subjective component of the deliberate indifference test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209. "Deliberate indifference" does not require a showing of express intent to harm. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005). To violate the Cruel and Unusual Punishments Clause,

a prison official must have a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1970).  The official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.

In his Complaint, the only allegation Plaintiff makes regarding the denial of the neurostimulator is that "medical staff" denied his requests for an implanted neurostimulator. (Compl. at 20.)  Even taking the facts and their inferences in the light most favorable to Plaintiff, he fails to established the subjective component of deliberate indifference by showing that any of the defendants knew of and disregarded an excessive risk to his health or safety or that they had a sufficiently culpable mind.  *See Farmer*, 511 U.S. at 837.  Because Plaintiff has failed to meet the deliberate indifference component of an Eighth Amendment claim, his claim properly is dismissed.

Moreover, the Eighth Amendment requires factual allegations establishing that a defendant personally participated in the constitutional violation.  *See Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976); *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To establish personal participation, Plaintiff must show an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).  Here, Plaintiff makes only a vague allegation that "medical staff" denied him the neurostimulator.  (Compl. at 20.)  Plaintiff has failed to allege any affirmative

link between the defendants' alleged denial of the neurostimulator and any defendant's participation in the denial.

Plaintiff's Claim Three properly is dismissed.

### d.      *Qualified Immunity*

The FCI Defendants, in their individual capacities, raise the defense of qualified immunity to Plaintiff's claims.  Whether a defendant is entitled to qualified immunity is a legal question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).  To overcome the defendants' claim of qualified immunity, the plaintiff must establish that the defendants' actions violated a constitutional or statutory right of the plaintiff's and that the right at issue was clearly established at the time of the defendants' alleged unlawful conduct.  *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  "[C]ourts have discretion to decide which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*  "Qualified immunity is applicable unless" the plaintiff can satisfy both prongs of the inquiry.  *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation marks and citations omitted).

This court has recommended Plaintiff's claims against the FCI Defendants be dismissed in their entirety; thus Plaintiff has not established that the defendants violated Plaintiff's constitutional or statutory rights.  The FCI Defendants are entitled to qualified immunity in their individual capacities.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** as follows:

26

1.	Plaintiff's claims for injunctive relief should be dismissed for lack of subject matter jurisdiction;

2.	Defendants Alvarado, Cimarossa, Santini, Vineyard, Trujillo, and Pelton's "Motion for Summary Judgment Regarding Unexhausted Claims" (Doc. No. 32)be **GRANTED** as to Claims One and Two, and **GRANTED** in part and **DENIED** in part as to Claim Three;

3.	"Defendants Allen and Gregory's Motion to Dismiss for Lack of Personal Jurisdiction" (Doc. No. 42) should be **GRANTED**; and

4.	Defendants Alvarado, Cimarossa, Santini, Vineyard, Trujillo, and Pelton's "Motion to Dismiss"(Doc. No. 31) should be **GRANTED** as follows:

a.	Plaintiff's *Bivens* claims for monetary damages against the FCI Defendant in their official capacities should be dismissed for lack of subject matter jurisdiction;

b.	Defendants Alvarado and Cimarosa should be dismissed from this civil action because they are entitled to absolute immunity;

c.	Plaintiff's remaining Claim Three against the FCI Defendants for Eighth Amendment violations should be dismissed for failure to state a claim upon which relief can be granted;

d.	The FCI Defendants should be granted qualified immunity in their individual capacities; and

5.	This case should be dismissed in its entirety.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

     Dated this 21st day of August, 2014.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge